## South, et al. v. Fish, et al.

(Decided September 20, 1918.)

### Appeal from Franklin Circuit Court.

1. Statutes—Title and Subject—Constitutional Law.—The purpose of section 51 of the Constitution, requiring that no law enacted by the General Assembly shall relate to more than one subject, which shall be expressed in its title, is, first, to prevent log-rolling legislation; second, to prevent surprise or fraud upon the legislature by means of provisions in bills of which the titles give no intimation, and which might, therefore, be overlooked and carelessly and unintentionally adopted; and, third, to fairly apprise the people, through such publication of legislative proceedings as is usually made, of the subjects of legislation that are being considered, in order that they may have an opportunity of being heard thereon.

2. Statutes—Title and Subject—Courts.—The courts cannot enlarge the scope of the title of an act of the legislature; they are vested with no dispensing power; the Constitution has made the title of an act the conclusive index to the legislative intent as to what shall have operation; and, it is no answer to say that the title might have been made more comprehensive if, in fact, the legislature have not seen fit to make it so.

3. Statutes—Title and Subject—How Act Should be Read—State Board of Health.—An act of the legislature entitled "An act relating to public health, repealing, amending and re-enacting sections 2054, 2059, 2060 and 2061 of the Kentucky Statutes, Carroll's edition of 1915, relating to the State Board of Health," &c., should be construed as if it read thus: "An act relating to public health, by repealing, amending and re-enacting sections 2054, 2059, 2060 and 2061 of the Kentucky Statutes," &c., and as restricting the purpose of the act to the repealing, amending and re-enacting of the sections of the statute which are therein specified.

4. Statutes—Title and Subject—Constitutional Law.—Section 51 of the Constitution providing that no law enacted by the General Assembly shall relate to more than one subject which shall be expressed in its title, is violated by the interpolation of subsection 20 establishing a State Board of Health, into the act of 1918, entitled "An act relating to public health, repealing,

amending and re-enacting sections 2054, 2059, 2060 and 2061 of the Kentucky Statutes, Carroll's Edition of 1915, relating to the State Board of Health, creating bureaus within said board to perform the functions of the existing State Tuberculosis Commission, the Hotel Inspector, the Pure Food and Drug Division of the Agricultural Experiment Station, and for other purposes, creating county and district departments of health and providing and limiting appropriations of the State Board of Health and further defining its powers and duties," since the subject of sub-section 20 is not mentioned in the title.

ELWOOD HAMILTON, C. U. McELROY, STANLEY E. SLOSS, SCOTT & HAMILTON, WRIGHT & McELROY, BINGHAM, SLOSS, TABB & MANN for plaintiffs.

BAIRD & RICHARDSON, T. W. & R. C. P. THOMAS, CHARLES H. MORRIS, Attorney General, THOMAS W. THOMAS, BASIL RICHARDSON, and ELI H. BROWN, JR., for defendants.

OPINION OF THE COURT BY JUDGE MILLER—Overruling motion to dissolve injunction.

This is a contest between the old State Board of Health, appointed under section 2047 of the Kentucky Statutes, and the new State Board of Health, appointed under the act of 1918. (Acts 1918, p. 290.) The plaintiffs are those members of the old board who would be ousted from office if the appointments of the defendants were authorized by the new act; the defendants include all the appointees under the new act, including four who were members of the old board, and were appointed members of the new board under the compulsory provisions of the new act, and claim to constitute the legally authorized State Board of Health.

This action was instituted by the members of the old State Board of Health, contending that sub-section 20 of section 2061 of the Kentucky Statutes, as amended by the new act of 1918, under which defendants are claiming to operate, is unconstitutional; and they asked that the defendants who constitute the new State Board of Health be enjoined from ousting or attempting to oust the plaintiffs from their offices and from interfering or attempting to interfere with the plaintiffs, or their employes, in the performance of their public duties, and from interfering with the enforcement and execution of the health laws by the old State Board of Health. The circuit court granted the injunction and the defendants are now asking that it be dissolved.

Referring briefly to the history of the legislation in the state upon this subject, it appears that in 1878 the State Board of Health was created by an act of the legislature which, with some modifications, has continued in force ever since, and is now embraced in sections 2047 to 2062b, inclusive, of the Kentucky Statutes, and constitutes a part of chapter 63 of that compilation. Referring to the provisions of those sections of the Statute, it will be seen that section 2047 creates the Board of Health, and prescribes the qualifications of its members, and section 2048 fixes the term of the members, and provides for the filling of vacancies. Section 2049 prescribes the duties of the members, while section 2050 provides for meetings, the making of rules and by-laws. Section 2051 provides for compensation for certain services, and sections 2052 and 2055 relate to the secretary, his duties, term of office, salary, &c. Sections 2054, 2059, 2060 and 2061, which are the sections amended by the act of 1918, will be considered later. Section 2055 relates to county boards, while section 2056 relates to quarantines. Section 2057 prescribes the powers and duties of the board with reference to certain kinds of nuisances; section 2058 relates to the duties of county attorneys; section 2062 to the prevention of yellow fever; section 2062a to vital statistics, and 2062b to tracoma and opthalmia. These sections, with sections 2054, 2059, 2060 and 2061, which are amended by the act of 1918, provide a complete system of law upon the subject of the public health.

The act of 1918 purports, on its face, to be an amendment to sections 2054, 2059, 2060 and 2061; and the plaintiffs concede that, with the exception of sub-section 20 of the amendment to section 2061, it is complete and amendatory of the four sections named, and that all of the parts of the amendatory act, with the exception of sub-section 20 of the amendment to section 2061, are germane to and are covered by the title of the new act.

But, plaintiffs contend that sub-section 20 of the amendment of 1918 to section 2061 of the Kentucky Statutes is void because in contravenes section 51 of the Constitution, which reads as follows:

"No law enacted by the General Assembly shall relate to more than one subject, and that shall be expressed in the title; and no law shall be revised, amended or the provisions thereof extended or conferred by reference

to its title only, but so much thereof as is revised, amended, extended or conferred shall be re-enacted and published at length.''

The title to the amendatory act of 1918 reads as follows:

''An act relating to public health, repealing, amending and re-enacting sections 2054, 2059, 2060 and 2061 of the Kentucky Statutes, Carroll's edition of 1915, relating to the State Board of Health, creating bureaus within said board to perform the functions of the existing State Tuberculosis Commission, the Hotel Inspector, the Pure Food and Drug Division of the Agricultural Experiment Station, and for other purposes, creating county and district departments of health and providing and limiting appropriations of the State Board of Health and further defining its powers and duties.''

As is indicated by the title, the amendment is a codification of the statutory laws upon the subject of the public health, by transferring to, and imposing upon the State Board of Health, under appropriate bureaus, the duties theretofore performed by the State Tuberculosis Commission, the Hotel Inspector and the Pure Food and Drug Division of the Agricultural Experiment Station.

The new act, pursuant to its title, amends sections 2054, 2059, 2060 and 2061 and greatly enlarges their scope. Section 2054, as amended, constitutes section 1 of the new act and relates to appropriations and certain administrative features of the act; section 2059, as amended, is section 2 of the new act, and relates to the inspection of hotels and restaurants; section 2060, as amended, is section 3 of the new act, and relates to adulterated drugs and food, while section 2061 of the amendment constitutes section 4 of the new act and covers the subject and treatment of tuberculosis. It will be observed that these four sections of the Kentucky Statutes are mentioned in the title. But sub-section 20 of section 2061, as amended, reads in part as follows:

''(20)   A board to be known as the State Board of Health is hereby established.''

Continuing, sub-section 20 provides for the selection and appointment of ten members of the new board, their qualifications, &c.

The grounds of plaintiffs' objection that sub-section 20 of the amendment above referred to, violates section 51 of the Constitution, are (1) that the subject of

sub-section 20 is not expressed in the title of the act; and, (2) that section 2048 fixing the terms of the members of the board is not re-enacted and published at length. Whether other sections of the act relating to the State Board of Health should have been re-enacted and published at length is a question not necessary to be determined now; but plaintiffs contend that section 2048 should have been so re-enacted and published, because that section is necessarily referred to in sub-section 20 of the amendment to section 2061 and is a vital part of it, without which sub-section 20 is meaningless.

Before proceeding to discuss these questions, it may be worth while to compare sections 2054, 2059, 2060 and 2061 of the Kentucky Statutes with the amendments to those sections in the act of 1918, omitting, for the present, sub-section 20 of which the plaintiffs complain.

Section 2054 made an annual appropriation of $30,000.00 for the State Board of Health, and provided the departments for which the appropriation might be used, and how warrants should be drawn; while section 2054 of the amendment of 1918 increases the appropriation to $75,000.00, provides the bureaus for which the appropriation should be used, adds to and elaborates those named in the original section, and provides how vouchers should be drawn. Sub-section 2 of the amendment to this section provides for the compensation of city and county health officers and the duties of the public in reference to making reports, &c.; directs steps to be taken for the prevention and control of epidemics; provides district health departments and prescribes their duties, the duties of Commonwealth's attorneys, or county attorneys, and the Attorney General; and for the control of yellow fever and other epidemic diseases, and similar matters, all of which are covered by the title of the act.

Section 2059 of the Kentucky Statutes, which related to local boards of health, is now covered by the amendment to section 2054, while section 2059, as re-enacted, defines the duties of the board with reference to hotel inspection and regulation, a matter which is covered by the title.

Section 2060 related to the duties of local health officers and their compensation, and this subject is covered in the amendment to section 2054, while the amend-

ment to section 2060 prescribes the duties of the State Board of Health in connection with the Pure Food Law, which is also a subject covered by the title.

Section 2061 of the Statutes provided for the continuance in office of existing local boards, a matter which, in the amendment of 1918, is put into the amendment to sub-section 20 of the new section 2061, although nothing in section 2061, as amended, affects local boards; and the first nineteen sub-sections of the amendment to section 2061 relate to the duties of the State Board of Health in connection with the study and prevention of tuberculosis, which is a matter also covered by the title of the amendatory act.

It will be seen, therefore, that the act of 1918 repeals sections 2054, 2059, 2060 and 2061, as stated in its title; that it re-enacts those sections as parts of section 2054, and adds some new provisions relating to appropriations and local and county boards, which are referred to in the title; and that by sections 2059 and 2060, and the first nineteen sub-sections of section 2061, hotel inspection, pure food and drugs, and tuberculosis treatment, and all subjects which are expressly referred to in the title, and all of which are germane to each other, are respectively provided for. The evident purpose of the amendment was to modernize the administration of the health laws of the state by consolidating the several branches of the public health service under the State Board of Health; and it is contended by the plaintiffs that the amendment, without sub-section 20, is a complete treatment of the subjects embraced in the title, and that the various parts thereof are germane to each other and are covered by the title to the act.

Turning to sub-section 20, we find it creates a new State Board of Health of ten members, although section 2047 of the Kentucky Statutes, which is not referred to in the title of the act of 1918, created a State Board of Health consisting of eight members who were to be selected and appointed in a manner somewhat different from that provided by the new act for selecting the new board. Sub-section 21 of section 2061, as amended, repeals all conflicting laws except the act to regulate the sale of adulterated food stuffs; but as there is nothing in the new act which conflicts with the act relating to adulterated foodstuffs, sub-section 21 need not be further considered.

On the other hand the defendants, constituting the new board, contend that the amendment of 1918 is a new, independent and general act relating to the public health, and that the first clause of the title of the act which declares it to be "An act relating to public health" is, within itself, a sufficiently certain and definite title to index every section or provision in the entire act. It may be conceded that if no other language than the words "An act relating to public health" had been used in the title, it would have been sufficient to meet every requirement of section 51 of the Constitution, as to title. Indeed, the title to the act of 1893, under which the old board was inducted into office, used general terms in declaring it to be "An act concerning the State Board of Health." (Acts 1893, p. 402.)

There has been a general disposition to construe the constitutional provision liberally, rather than to embarrass legislation by a construction whose strictness is unnecessary to the accomplishment of the beneficial purposes for which it has been adopted. Cooley's Con. Lim., 7th Ed., p. 209. It is well known that the principal object of section 51 of the Constitution is that neither the members of the legislature nor the people should be misled by the title. But the generality of a title is no objection to it, so long as it is not made a cover to legislation incongruous in itself, and which, by no fair intendment, can be considered as having a necessary or proper connection. Consequently, no provision in a statute having a natural connection with the subject expressed in the title and not foreign to it, is to be deemed within the constitutional inhibition. Cooley's Con. Lim., 7th Ed., p. 206; Johnson v. Higgins, 3 Met. 566; McReynolds v. Smallhouse, 8 Bush, 477.

But the difficulty in the present case arises from the fact that the title of the new act of 1918 is not confined to general terms, but declares it to be "An act relating to public health, repealing, amending and re-enacting sections 2054, 2059, 2060 and 2061 of the Kentucky Statutes, Carroll's edition of 1915, relating to the State Board of Health," &c. The question for determination, therefore, is this: what effect is to be given to the words "repealing and re-enacting sections 2054, 2059, 2060 and 2061 of the Kentucky Statutes?" Are they to be treated as restricting the title of the act relating to public health to the repealing, amending and re-enacting the sections

named? Or, are they to be treated as separate and independent provisions relating to the repealing, amending and re-enacting of the four sections named, and leaving the first portion of the title, "An act relating to the public health," to stand alone, unaffected and unrestricted by the words which follow it?

The defendants insist that the meaning of the title is the same as if it read thus: "An act relating to public health, *and* repealing *and* amending *and* re-enacting sections 2054," &c.; that the conjunctive "and" is understood wherever the comma appears in the title; and, that the title should be so construed as to permit the act, if possible, to comply with section 51 of the Constitution, and not with a view of making it conflict or fail to comply with that instrument. On the other hand, the plaintiffs contend that the full meaning of the title is expressed when it is read as follows: "An act relating to public health *by* repealing, amending and re-enacting sections 2054," &c. It is entirely probable that under the title as paraphrased by the new board the act would be sustained upon the theory that the portion of the title reading "An act relating to public health" should be treated as an independent and distinct subject, while all the remaining subjects of the act, including sub-section 20, are germane thereto; and, on the other hand, that under the paraphrase of the plaintiffs the clause, "*by* repealing, amending and re-enacting sections 2054," &c., should be treated as a restriction upon the preceding clause of the title reading "An act relating to public health," and would, therefore, violate section 51 of the Constitution, because the title thus restricted would not be broad enough to authorize the enactment of sub-section 20, by which a new board was created. So the case is reduced to the proposition of determining the meaning and scope of the title to the act of 1918. But in doing this we have no right to enlarge the title by adding to it or subtracting from it. We must read the title as the legislature has given it.

The rule is stated by Cooley as follows:

"The courts cannot enlarge the scope of the title; they are vested with no dispensing power; the Constitution has made the title the conclusive index to the legislative intent as to what shall have operation; it is no answer to say that the title might have been made more

comprehensive, if in fact the legislature have not seen fit to make it so.'' Con. Lim., 7th Ed., 212. See also Wiemer v. Commissioners of Sinking Fund, 124 Ky. 377, and Burton v. Monticello & Burnside T. P. Co., 162 Ky. 787.

There have been many cases in this court in which the scope and effect of that portion of section 51 of the Constitution relating to the titles of acts have been considered, the principal cases holding the title to be defective being Henderson Bridge Co. v. Alves, 122 Ky. 46; Board of Trustees Erlanger G. C. S. D. v. Tate, 155 Ky. 296; Thompson v. Commonwealth, 159 Ky. 8; Burton v. Monticello & Burnside T. P. Co., 162 Ky. 787; Bosworth, Auditor v. State University, 166 Ky. 436; Exall v. Holland, 166 Ky. 315; Houston v. Boltz, Judge, 169 Ky. 640; Ogden v. Cronan, Sheriff, 171 Ky. 254, and Fitzpatrick v. McGinnis, 174 Ky. 600.

It has been aptly said that the purpose of this constitutional provision concerning titles to legislative acts is, first, to prevent log-rolling legislation; second, to prevent surprise or fraud upon the legislature by means of provisions in bills of which the titles give no intimation, and which might, therefore, be overlooked and carelessly and unintentionally adopted; and, third, to fairly apprise the people, through such publication of legislative proceedings as is usually made, of the subjects of legislation that are being considered, in order that they may have opportunity of being heard thereon. Cooley's Const. Lim., 7th Ed., p. 256; Board of Trustees Erlanger G. C. S. D. v. Tate, 155 Ky. 296; Bosworth, Auditor v. State University, 166 Ky. 436; Houston v. Boltz, Judge, 169 Ky. 640; Commonwealth v. Bassett, 171 Ky. 385; Smith v. Commonwealth, 175 Ky. 291.

Bearing in mind the purpose of the rule as an aid to its interpretation, we will briefly examine the cases above cited for the purpose of showing its application in illustrative cases.

In Henderson Bridge Co. v. Alves. *supra,* the legislature had passed an act in 1898 concerning the assessment of corporate franchises and intangible property ''by cities of the first and second class,'' and by an act of 1900 the provisions of the act of 1898 were extended so as to include cities of the third class. By its title, however, the act of 1900 purported merely to amend and re-enact the act of 1898, and made no reference to cities of the third class. But the body of the act of 1900 extended

the provisions of the act of 1898 to cities of the third class, although there was nothing in the title of the act to indicate that fact.    In condemning the act as a departure from its title, the court declared that while the title of the act of 1900 would inform the members of the General Assembly and the public that the assessment for taxation of corporate franchises and intangible property by cities of the first and second classes was regulated by the act, it did not inform them that any regulation was proposed as to cities of the third class.   For that reason alone it was held that the act of 1900 violated section 51 of the Constitution.

In the Tate case, *supra*, it was held that an act of the legislature authorizing ''Special Act Schools'' and ''all other graded schools of this Commonwealth'' to levy a special school tax, violated section 51 of the Constitution, insofar as it applied to the common schools established and operated under the general laws of the state, because the title to said act dealt only with ''Special Act Schools,'' and made no reference to the other graded schools of the Commonwealth, ''Special Act Schools'' being different, under the law, from the graded schools of the Commonwealth.

In Thompson v. Commonwealth, *supra*, an act entitled ''An act to appropriate money for the benefit of the House of Reform, to provide funds to pay the existing deficit and to make improvements at the House of Reform,'' contained twelve sections appropriating money and providing for improvements, and two sections relating to the commitment and control of juvenile offenders. It was held that the two sections relating to juvenile offenders were void because they were not mentioned in the title.

In Burton v. Monticello & Burnside Turnpike Co., *supra*, the act before the court was entitled ''An act defining public roads—providing for their establishment, regulation and construction and use and maintenance— creating the office of Road Engineer and prescribing the duties thereof.''    Acts 1912, p. 309.   In short, the title spoke solely of public roads and county road engineers, but sections 39 and 40 thereof related to tolls to be collected for the use of turnpikes owned by individuals. It was held that sections 39 and 40 were invalid because they were not covered by the title of the act.

Likewise, in Bosworth v. State University, *supra*, where an act entitled "An act for preventing the manufacture and sale of adulterated or misbranded foods, drugs, medicines and liquors, and providing penalties for violations thereof" contained a sub-section providing for the payment of certain fees and expenses to the Agricultural Experiment Station for analyzing samples of food or drugs made by its director, and other expenses named therein, it was held that the sub-section violated section 51 of the Constitution because neither the expenditures nor the appropriations specified therein could be said to be embraced in the subjects expressed in the title to the act.

In Exall v. Holland, *supra*, an act of 1914 entitled "An act defining public roads; providing for their establishment, regulation, use and maintenance; and creating the office of county road engineer, and prescribing the duties thereof," contained a section expressly repealing sections 4287-4356 of the Kentucky Statutes. Acts 1914, p. 338, sec. 89. It was held that no repeal was effected by the act of 1914 because the title thereof did not refer to, or indicate in any way, that a clause in the act was designed to repeal any section of the Kentucky Statutes. This ruling was followed and reaffirmed in Fitzpatrick v. McGinnis, *supra*.

Again, in Houston v. Boltz, Judge, *supra*, it was held that the act of 1896 (Ky. Sts. 1909, sec. 4748b) which authorized a county to issue bonds for the purpose of buying the privately owned turnpikes and gravel roads was not repealed by section 89 of chapter 80 of the Acts of 1914, entitled "An act defining public roads; providing for their establishment, regulation, use and maintenance; and creating the office of county road engineer, and prescribing the duties thereof," although it expressly purported to make the repeal, because the purpose of the act of 1914 to repeal the act of 1896 was not mentioned in its title, and therefore violated section 51 of the Constitution.

In Ogden v. Cronan, Sheriff, *supra*, an act of 1916 entitled "An act to amend and re-enact section 1486, Carroll's edition of the Kentucky Statutes of 1915, entitled 'Registration in certain cities and towns,'" contained in the body thereof a provision extending the registration laws applicable to cities and towns to certain country

districts. This last provision was held invalid because that subject—registration in country districts—was not expressed in the title.

See also Chiles v. Monroe, 2 Met. 75; Pennington v. Woolfolk, 79 Ky. 13; In Re Barker, 132 Ky. 220, to the same effect.

But in none of these cases did the title read precisely or substantially like the title before us. In those cases the meaning of the title was clear, but the statute was made invalid because the obnoxious provision in the body of the act was a departure from its title; while in the case before us the difficulty arises in ascertaining the meaning of a title made doubtful by the language used therein.

The application of the rule will be comparatively easy whenever the meaning of the title is finally determined, for, as heretofore stated, if the phrase "repealing, amending and re-enacting sections 2054, 2059, 2060 and 2061 of the Kentucky Statutes" qualifies the preceding section of the title, the effect of the title will be restricted to the repealing, amendment and re-enactment of the sections of the statutes mentioned, and sub-section 20 of section 2061 as amended, creating a new State Board of Health, is invalid because it is not covered by the title, when so read.

After a careful consideration of the title to the act in question in all of its phases, we have reached the conclusion that its meaning must be restricted in the manner above indicated, and that the title should be construed as if it read "An act relating to public health, by repealing, amending and re-enacting sections 2054, 2059, 2060 and 2061 of the Kentucky Statutes, Carroll's edition of 1915, relating to the State Board of Health," &c. It will be observed that the title refers to and recognizes the existing State Board of Health created by section 2047 of the Kentucky Statutes, and indicates the purpose of the legislature of imposing upon it the duties which had theretofore been performed by the Tuberculosis Commission, the Hotel Inspector and the Pure Food and Drug Division of the Agricultural Experiment Station, without any intimation of a purpose to repeal section 2047, or to create a new Board of Health. Furthermore, sub-section 20 contains no express terms repealing section 2047; at most it could operate as a repeal of that

section, by implication only. And it fails to fix the terms of the new board members, which must be supplied from section 2048. In short, sub-section 20 bears all the marks of being an interpolation to an act otherwise carefully drawn. And, as heretofore shown, the purpose of the constitutional provision is to prevent interpolations which are irrelevant to the title of the act.

By reading the title to this act one would naturally suppose that it related only to sections 2054, 2059, 2060 and 2061 of the Kentucky Statutes, and created the three bureaus therein specified. While not directly in point, State v. Tibbitts, 52 Neb. 228, 66 Am. St. Rep. 499; Trumble v. Trumble, 55 N. W. (Neb.) 869; State v. Bowen, 74 N. W. (Neb.) 615; Armstrong v. Mayer, 83 N. W. (Neb.) 40; Board of Commissioners v. Aspen Mining Co., 39 Col. App. 223; Cahill v. Hogan, 180 N. Y. 304; *Ex parte* Reynolds, 6 Sou. (Ala.) 335; State v. Southern Ry. 115 Ala. 250; State v. American Sugar Refining Co., 106 La. 553; Delese v. Pierce, 124 Ills. 140; State v. Heeger, 36 S. W. (Mo.) 614; *Ex parte* Hewlett, 40 Pac (Nev.) 96; Watkins v. Bigelow, 100 N. W. (Minn.) 1104, are instructive as bearing upon the general question.

The constitutional provision is a wise one; and while we have always given it a liberal construction, we must not give it a strained construction, or one that would fail to protect a person of average intelligence. Furthermore, the provisions of the Constitution being mandatory, they should not be lightly treated, or permitted to be evaded by the use of obscure language.

The circuit court properly held sub-section 20 of section 2061 of the Kentucky Statutes, as amended by the act of 1918, to be invalid, and the motion to dissolve the injunction is overruled. The whole court sitting.